549 So.2d 870 (1989)
Angela Gonzales, Wife of/and Winston A. ST. HILL
v.
Carolyn Kass TABOR a/k/a Carolyn Falgout and State Farm Fire and Casualty Company.
No. 87-CA-526.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1989.
On Rehearing October 12, 1989.
Rehearing Denied November 9, 1989.
Edward R. Drury, Morris W. Reed, New Orleans, for plaintiffs-appellants.
Daryl A. Higgins, Gretna, for defendants-appellees.
Before KLIEBERT, BOWES and GAUDIN, JJ.
GAUDIN, Judge.
This case is on remand from the Supreme Court of Louisiana for the fixing of damages, 542 So.2d 499. Earlier, the trial judge had ruled in favor of the named defendants and this Court affirmed.[1] The dissenting opinion of Judge Fred S. Bowes set damages at $141,276.61, subject to a 25 percent reduction for contributory negligence. For reasons expressed in the dissent, we hereby assess damages at $141,276.61.
Accordingly, judgment is rendered in favor of Angela and Winston A. St. Hill and against Carolyn Kass Tabor, a/k/a Carolyn Falgout, and State Farm Fire and Casualty Company, jointly, severally and solidarily, in the full sum of $141,276.61, plus interest from date of judicial demand and all court costs, minus 25 percent, the percentage of Shawn St. Hill's contributory negligence as set by the Supreme Court.
Appellees are to bear costs of this appeal.

ON REHEARING
BOWES, Judge.
This case is before us for the second time on appeal on an application for a rehearing of our opinion of June 7, 1989. In our original opinion of July 26, 1988, a majority of this court held that the defendants were not liable for the death of Shawn St. Hill, with one judge dissenting. St. Hill v. Tabor, 532 So.2d 776 (La.App. 5 Cir.1988). The Supreme Court granted writs at 536 So.2d 1227 (La.1989) and, in a subsequent opinion, at 542 So.2d 499 (La.1989), reversed the decree of the majority of this court by finding that defendants were comparatively negligent in the amount of 75%, and the case was remanded to us for the fixing of damages.
On June 7, 1989, this court issued an opinion fixing damages at $141,276.61 subject to a 25% reduction for comparative negligence "for reasons expressed in the dissent." Judgment was rendered against *871 Carolyn Kass Tabor and State Farm Fire and Casualty Company, Aetna Insurance Company and plaintiffs each applied for a rehearing, which we have granted.
Mrs. Tabor and State Farm had previously been dismissed from the litigation via settlement in the sum of $100,000.00. State Farm was Mrs. Tabor's primary insurer. Aetna was the excess insurer and the only remaining defendant at the time of trial. Aetna avers in their application for rehearing that judgment should have been rendered against it, the sole remaining defendant, as the excess insurer and the opinion of June 7th changed to reflect Aetna's entitlement to a credit for the payment made by State Farm. Plaintiffs, for their part, urge this court to reconsider and increase the quantum of damages.
The testimony revealed that Mr. and Mrs. St. Hill were living apart due solely to Mrs. St. Hill's employmentit was economically necessary that she work in Baltimore. However, the family had planned to move to Baltimore the summer Shawn died and live together as a unit again. Both Mr. and Mrs. St. Hill testified that they had a close and loving relationship with Shawn. While there was testimony that Shawn worked part time, there is nothing to suggest that he supported his family in any significant way.
As for Shawn, he was found in the pool at approximately 10:30 p.m. After being pulled from the water, C.P.R. was administered. When he arrived at the hospital, there were no vital signs, but his heart did respond to electrical shock and began beating. It is not known exactly how long he was in the water, but it was determined by the doctors that he was still alive and probably fully conscious when he went underwater; there were further medical indications that he struggled, then convulsed, before losing consciousness. The medical records indicated he suffered severe brain damage, and there is no evidence that he ever regained consciousness. It is unknown, what, if any, pain he may have suffered at the hospital prior to his death.
In attempting to fix, in monetary terms, damages to parents for the death of a beloved child, we are acutely aware that no equation exists between the profoundness of the loss and the amount of any judgment. Such bereavement cannot translate into fiscal terms and each child is a pearl beyond price to its own parents. Yet it is our task to attempt, at least, to measure the immeasurable with finite tools and, in cases such as this, the only means at our disposal is money.
Our survey of the particular facts and circumstances of this case leads us to conclude that an award of $100,000 each to Mr. and Mrs. St. Hill is appropriate in the present situation. Previously, in the original opinion on remand, we adopted reasons expressed in the dissent as a basis of our award of $60,000 to each parent. However, on reconsideration, we believe that our finding there that, because the family did not live together, they "apparently did not have a `normal relationship'" is an oversimplification of the facts. Therefore, on rehearing, we find that an award of $100,000 to each of these parents is more suitable. However, we do find our award of $15,000 for the pain and suffering of Shawn prior to his death remains appropriate.
Further, in the present case, Aetna should be granted credit for the sums previously paid by State Farm in settlement. LSA-C.C. art. 1803.[1] Aetna was the only remaining defendant at trial and judgment should have been assessed only against it.
Evidence of the following expenses were admitted at trial:

Dr. Charles Steiner $ 425.00
West Jefferson General Hospital 2,499.20
Gertrude Geddes-Willis Funeral 3,352.41
Home

*872 Therefore, the record supports the following award of damages:

To Mr. and Mrs. Winston St. Hill:
Medical Expenses
Dr. Charles Steiner $ 425.00
West Jefferson General Hospital 2,499.20
Funeral expenses 3,352.41
Shawn's physical pain and suffering 15,000.00
[to Mr. and Mrs. St. Hill]
Total award to Mr. and Mrs. St. $ 21,276.61
Hill, jointly
General damages: Grief, mental
anguish, loss of affection, companionship
and society:
Mrs. Angela St. Hill $100,000.00
Mr. Winston St. Hill 100,000.00
Total amount of judgment $221,276.61

Accordingly, judgment is rendered in favor of Angela and Winston St. Hill and against Aetna Casualty & Surety Company in the amount of $221,276.61, plus legal interest from date of judicial demand, subject to reduction of 25% as a result of the comparative negligence of Shawn St. Hill, and further subject to a credit for $100,000 previously paid in settlement of this matter by the primary insurer. Appellees are to bear all costs of the appeal in all courts.
JUDGMENT RENDERED.
GAUDIN, Judge dissenting.
I dissent.

ORDER
Defendant, Aetna Casualty and Surety Company, has filed a motion to vacate and recall our opinion rendered October 12, 1989, averring that the case sub judice is one which requires a five-judge panel.
The Louisiana Constitution, Article 5, Section 8(B) and the Uniform RulesCourts of Appeal rule 1-5 cited by mover provide for a five-judge panel when the appellate court seeks to modify or reverse a judgment of the district court. In the present case, our State Supreme Court reversed both the district court and this circuit court to find the defendant liable. Having done so, with that opinion now final, the Supreme Court remanded the matter to us for the fixing of damages, which task does not entail reversal or modification of a district court judgment.
Therefore, the present opinion does not necessitate the convention of a five-judge panel, and the motion is denied.
Gretna, La., this 9th day of November, 1989.
NOTES
[1] See 532 So.2d 776 (La.App. 5th Cir.1988).
[1] LSA-C.C. art. 1803 reads as follows:

Remission of debt to or transaction or compromise with one obligor
Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
Surrender to one solidary obligor of the instrument evidencing the obligation gives rise to a presumption that the remission of debt was intended for the benefit of all the solidary obligors.